**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID R. ROSENKILDE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 1:06CV170 LMB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying David P. Rosenkilde's application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff has filed a Brief in Support of Complaint. (Document Number 10). Defendant has filed a Brief in Support of the Answer. (Doc. No. 13).

## Procedural History

On June 1, 2004, plaintiff filed an application for Disability Insurance Benefits, claiming that he became unable to work due to his disabling condition on May 15, 1992.[1] (Tr. 63-65). This claim was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated June 6, 2006.

---

[1]Plaintiff previously filed applications under Titles II and XVI on January 17, 1990, alleging disability beginning August 18, 1989, which were denied initially, on reconsideration, and by an ALJ's post-hearing decision dated November 5, 1990. (Tr. 15). This decision was not appealed. (Id.). Plaintiff also filed applications under Titles II and XVI on October 15, 1996, alleging disability beginning October 15, 1992. (Tr. 16). These applications were denied at the initial and reconsideration levels, and were not pursued further. (Id.).

(Tr. 49-55, 11-18).  Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on September 27, 2006.  (Tr. 8, 5-7).  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.  ALJ Hearing

Plaintiff's administrative hearing was held on April 4, 2006.  (Tr. 31).  Plaintiff was present and was represented by counsel.  (Id.).  Also present was vocational expert Barbara Myers.  (Id.).  The ALJ admitted the exhibits into the record.  (Id.).  Plaintiff's attorney stated that he was trying to obtain plaintiff's old Veteran's Administration (VA) records.  (Id.).  The ALJ indicated that she would leave the record open for thirty days.  (Id.).

The ALJ then examined plaintiff, who testified that he was 51 years of age, six-feet five inches tall, and weighed 167 pounds.  (Tr. 32).  Plaintiff stated that his weight fluctuates.  (Tr. 33).  Plaintiff testified that he was left-hand dominant.  (Id.).  Plaintiff stated that he was not married.  (Id.).  Plaintiff testified that he had three dependent children, although he did not know their ages.  (Id.).  Plaintiff stated that he did not think that his children were under the age of eighteen.  (Id.).

Plaintiff testified that he had been a resident of the VA Medical Center in Poplar Bluff since August of 2005.  (Tr. 34).  Plaintiff stated that he lived at his brother's house prior to living at the VA Medical Center.  (Id.).  Plaintiff testified that he was able to bathe himself when he lived with his brother but he was not able to do housework or cooking.  (Id.).  Plaintiff stated that he does not drive.  (Id.).  Plaintiff testified that he has difficulty driving due to sunlight and lights at

night.  (Id.).  Plaintiff stated that he began experiencing difficulty driving in 1990.  (Id.).

Plaintiff testified that he completed the twelfth grade.  (Id.).  Plaintiff stated that he attended nursing school at Three Rivers Community College but he did not obtain his degree.  (Tr. 35).  Plaintiff testified that he served in the navy for four years.  (Id.).

Plaintiff stated that he was not working at the time of the hearing.  (Id.).  Plaintiff testified that he last worked in 1996 caring for mentally retarded persons.  (Id.).  Plaintiff stated that he worked about 32 hours a week at this position.  (Tr. 36).  Plaintiff testified that he had to lift patients at this job.  (Id.).  Plaintiff stated that he did not obtain his CNA certificate.  (Id.).  Plaintiff testified that he performed work as a care-giver for a few months.  (Id.).

Plaintiff stated that prior to working as a care-giver, he worked at a nursing home.  (Id.).

Plaintiff testified that he worked full-time as a corrections officer in Arizona from 1985 to 1991.  (Tr. 37).  Plaintiff stated that he had to restrain people at this position.  (Id.).

Plaintiff testified that he also worked part-time as a landscaper in Minnesota.  (Id.).  Plaintiff stated that he occasionally had to lift over fifty pounds at this position.  (Id.).  Plaintiff testified that he only worked as a landscaper for about six weeks.  (Tr. 38).

Plaintiff stated that he worked as a janitor for about four weeks.  (Id.).

Plaintiff testified that he also worked as a security guard for about four weeks.  (Id.).

Plaintiff stated that he stopped working altogether in 1996 because he was experiencing difficulty with falls, dizziness, diabetes, and high blood pressure.  (Id.).  Plaintiff testified that his doctor did not take him off work.  (Id.).  Plaintiff stated that his last full-time position was as a correctional officer in Arizona in 1991.  (Tr. 39).  Plaintiff testified that he has been hospitalized periodically.  (Id.).  Plaintiff stated that he had his appendix removed when he was working in

Arizona.  (Id.).

Plaintiff testified that his primary doctor is Michael Vinskie at the VA Medical Center.
(Id.).  Plaintiff stated that he is currently being treated for his diabetes.  (Id.).  Plaintiff testified
that he has a wound on his leg that will not heal.  (Id.).

Plaintiff stated that his right great toe was amputated four to five years prior to the
hearing.  (Tr. 40).  Plaintiff testified that his toe was amputated after he left his job in Arizona.
(Id.).  Plaintiff stated that he received medical treatment at the VA Medical Center in Arizona.
(Id.).  Plaintiff testified that he had been using a cane for a few years and that he used the cane
prior to undergoing surgery on his toe.  (Id.).  Plaintiff stated that he was not using the cane when
he worked in Arizona.  (Id.).

Plaintiff's attorney then examined plaintiff, who testified that at his last job, he cared for
developmentally disabled persons at Operating Systems.  (Tr. 41).  Plaintiff stated that he worked
at Cedar Gate, a nursing home in Poplar Bluff, when he was in nursing school.  (Id.).  Plaintiff
testified that his last job was at Operating Systems.  (Id.).  Plaintiff stated that he did not work at
his last job very long.  (Id.).

Plaintiff testified that he had a stroke in about 1990.  (Tr. 42).  Plaintiff stated that he
worked at temporary jobs after he had the stroke.  (Id.).  Plaintiff testified that he did not work at
a full-time position after he had his stroke.  (Id.).

Plaintiff stated that he has diabetes.  (Id.).  Plaintiff testified that he experiences numbness
in his hands and legs.  (Id.).  Plaintiff stated that his right great toe was amputated in 1995.  (Id.).
Plaintiff testified that he has not worked at a full-time position since his toe was amputated.
(Tr. 43).  Plaintiff stated that he only worked at temporary jobs in 1996.  (Id.).  Plaintiff testified

that he began experiencing numbness in his legs and arms when he was discharged from the service in 1979.  (<u>Id.</u>).

Plaintiff's attorney indicated that plaintiff was having difficulty controlling his emotions during the hearing.  (Tr. 44).  Plaintiff testified that he did not know if his emotional problems were caused by his stroke.  (<u>Id.</u>).

Plaintiff stated that he worked at Price Chopper performing janitorial work such as cleaning and waxing floors.  (<u>Id.</u>).  Plaintiff testified that he did not work anywhere full-time since working at Price Chopper in 1989.  (<u>Id.</u>).

Plaintiff stated that his diabetes affects his eyesight.  (<u>Id.</u>).  Plaintiff testified that he is unable to read because his vision is blurry.  (<u>Id.</u>).  Plaintiff stated that his vision has been blurry for over ten years.  (<u>Id.</u>).  Plaintiff testified that his vision started becoming blurry in 1992 or 1993.  (<u>Id.</u>).  Plaintiff stated that he only drives when it is necessary.  (Tr. 45).

Plaintiff testified that his stroke has affected his ability to speak clearly.  (<u>Id.</u>).  Plaintiff stated that his stroke also affected his ability to concentrate and remember.  (<u>Id.</u>).  Plaintiff testified that he is not as "sharp" as he used to be.  (<u>Id.</u>).

Plaintiff stated that he had difficulty working at Price Chopper due to the physical problems caused by his diabetes.  (<u>Id.</u>).  Plaintiff testified that he has had severe diabetes for a long time.  (<u>Id.</u>).

The ALJ then examined the vocational expert, Barbara Myers, who testified that she had reviewed the vocational evidence in plaintiff's file.  (Tr. 46).  The ALJ asked Ms. Myers to classify plaintiff's past work.  (<u>Id.</u>).  Ms. Myers testified that the record does not indicate that plaintiff worked after 1991.  (<u>Id.</u>).

**B.      Relevant Medical Records**

The record reveals that plaintiff received treatment at John J. Pershing VA Medical Center (VAMC) from October 1992 through June 2004.  On October 26, 1992, plaintiff presented with complaints of right shoulder pain.  (Tr. 138).  It was noted that plaintiff had a history of insulin-dependent diabetes mellitus (IDDM).[2]  (Id.).  Plaintiff was given a diagnosis of rule out bursitis[3] and x-rays were ordered.  (Id.).

Plaintiff underwent x-rays of his right shoulder on November 24, 1992, which revealed no abnormalities.  (Tr. 140).  Plaintiff was diagnosed with biceps tendinitis[4] at that time.  (Id.). Physical therapy was prescribed.  (Id.).

Plaintiff participated in physical therapy for his right shoulder from November 24, 1992, through December 9, 1992.  (Tr. 139, 141).

Plaintiff presented to VAMC on February 22, 1993, at which time his diagnoses were listed as degenerative joint disease,[5] IDDM, chronic obstructive pulmonary disease,[6] and tendonitis.  (Tr. 142).  There is no evidence in the record of objective testing or signs or

---

[2]Form of diabetes characterized by excessive thirst, excessive excretion of urine, increased appetite, weight loss, low plasma insulin levels, and susceptibility to ketoacidosis.  Stedman's Medical Dictionary, 529 (28th Ed. 2006).

[3]Inflammation of a bursa, which is a closed sac or envelope usually found in areas subject to friction.  See Stedman's at 280.

[4]Inflammation of a tendon.  See Stedman's at 1944.

[5]Degenerative joint disease, or osteoarthritis, is arthritis characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned; pain and loss of function result.  See Stedman's at 1388.

[6]General term used for those diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory flow is slowed.  Stedman's at 554.

symptoms that led to plaintiff's diagnosis of chronic obstructive pulmonary disease.

Plaintiff's next medical record is dated June 3, 1994, at which time plaintiff developed a lesion of the left side of his nose that was excised the following month. (Tr. 143-46).

On June 14, 1996, plaintiff presented to VAMC, with complaints of left sided drooling and difficulty speaking. (Tr. 149). Plaintiff was diagnosed with stroke. (Id.).

On July 31, 1996, plaintiff reported that he no longer had a speech problem. (Id.).

Plaintiff underwent surgical amputation of the right first and second toes due to diabetic ulcers on April 2, 1999. (Tr. 184).

Plaintiff presented for treatment of diabetic ulcers on February 22, 2000. (Tr. 304-06). Plaintiff was diagnosed with poorly controlled IDDM and bleeding ulceration of the right foot. (Tr. 306).

On August 15, 2000, plaintiff was hospitalized for a syncopal episode.[7] (Tr. 302-04). Plaintiff had decreased sensations to touch, pin prick, temperature and vibrations in both lower extremities and hands, consistent with peripheral neuropathy.[8] (Tr. 303). Plaintiff also had problems with his gait, which caused poor balance and a tendency to fall. (Id.). Plaintiff was discharged with instructions to maintain a diabetic diet, take insulin as directed, and use a cane to help with balance. (Tr. 304).

Plaintiff continued to receive treatment at VAMC for his diabetes, foot ulcers, and various acute conditions through June 17, 2004.

---

[7]Loss of consciousness and postural tone caused by diminished cerebral blood flow. Stedman's at 1887.

[8]A disease involving the peripheral nervous system. See Stedman's at 1313.

**The ALJ's Determination**

The ALJ made the following findings:

1.  The claimant met the special earnings requirements of the Act as of May 15, 1992, the alleged onset of disability, and continued to meet them through December 31, 1993, but not thereafter.

2.  The claimant has not engaged in substantial gainful activity since May 15, 1992.

3.  The medical evidence establishes that the claimant, through December 31, 1993, had insulin-dependent diabetes mellitus controlled by medication, and a status-post brief minor right shoulder injury.

4.  The claimant's allegation of impairments, either singly or in combination, producing symptoms and limitations of sufficient severity to prevent the performance of any sustained work activity for a continuous period of at least twelve months beginning on or before December 31, 1993, is not credible, for the reasons set out in the body of this decision.

5.  The claimant, through December 31, 1993, had only slight abnormalities that did not significantly affect the performance of any basic work-related activities. Therefore, the claimant did not have a "severe" impairment as defined in 20 CFR 404.1521(c).

6.  The claimant was not under a "disability," as defined in the Social Security Act, at any time beginning on or before December 31, 1993.  20 CFR 404.1520(c).

(Tr. 18).

The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that, based upon the application filed on June 1, 2004, the claimant is not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act.

(Id.).

**Discussion**

**A.**     **Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to

the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA

will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel,

222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v.

Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th

Cir. 1992).  The reviewing court, however, must consider both evidence that supports and

evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015,

1017 (8th Cir. 1996).  "[T]he court must also take into consideration the weight of the evidence

in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141

F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."

Id.

**B.**     **The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant

has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d

- 9 -

598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied.
See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.
 See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  See 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  See id.  If the

claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

## C.     Plaintiff's Claims

Plaintiff raises two claims on appeal of the decision of the Commissioner. Plaintiff first argues that the ALJ erred in failing to reopen his prior disability applications filed in January 1990. Plaintiff next argues that the ALJ erred in finding that plaintiff did not have a severe impairment prior to the expiration of his insured status on December 31, 1993.

## 1.     Prior Applications

Plaintiff argues that the ALJ erred in failing to reopen his applications for benefits under Titles II and XVI, which were filed on January 17, 1990, and alleged an onset of disability date of August 18, 1989. Plaintiff's applications filed on January 17, 1990 were denied initially, on reconsideration, and by an ALJ in a decision dated November 5, 1990. In plaintiff's current application for benefits, he alleged that he became disabled on May 15, 1992, one year and six months after the final decision of his 1990 applications. There was no period of overlap between plaintiff's two applications, thus indicating that plaintiff was not seeking reopening of his prior applications.

A plaintiff may request that a final determination be reopened. <u>See</u> 20 C.F.R. §

404.987(b). A determination will be reopened under the following circumstances:

> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or
> (c) At any time if-
> ***
> (8) It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made;

20 C.F.R. § 404.988. Good cause for reopening a prior determination will be found if:

> (1) New and material evidence is furnished;
> (2) A clerical error in the computation or recomputation of benefits was made; or
> (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.
> (b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made.

20 C.F.R. § 404.989.

In this case, none of the conditions for reopening a prior determination are satisfied. As previously discussed, in his current application for benefits, plaintiff alleged an onset date one year and six months after his prior applications. Further, plaintiff did not request that his prior applications be reopened at the administrative hearing or in his request for review with the Appeals Council. Thus, the ALJ did not err in failing to reopen plaintiff's prior applications.

Plaintiff also argues that the ALJ should have awarded him benefits under Title XVI of the Social Security Act. Plaintiff, however, did not file an application for Title XVI benefits in June 2004. Plaintiff also did not request to file an application for Title XVI benefits at any time during the administrative process. As such, plaintiff's claim lacks merit.

**2.      Medical Evidence of a Severe Impairment Prior to December 31, 1993**

Plaintiff argues that the ALJ erred in finding that plaintiff did not have a severe impairment prior to the expiration of his insured status on December 31, 1993, because objective medical evidence of a severe impairment existed prior to that time. Defendant argues that the objective medical evidence does not support the existence of a severe impairment prior to December 31, 1993.

In order to be entitled to a Period of Disability and Disability Insurance Benefits, a claimant must be insured for disability. See 20 C.F.R. §§ 404.315, 404.320. Thus, in order to receive disability insurance benefits, a claimant must show onset of disability before the expiration of insured status. See Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998). In this case, plaintiff must show an onset of disability prior to December 31, 1993, plaintiff's last date of insured status.

The ALJ found at step two of the sequential evaluation that plaintiff had no severe impairments at the time his insured status expired. (Tr. 16). Step two of the sequential evaluation process requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. While the burden is not great, the claimant bears the burden at step two to demonstrate a severe impairment that significantly limits the ability to perform basic work activities. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001). The sequential evaluation process may be terminated at step two when the claimant's impairment or combination thereof would have no more than a minimal effect on the claimant's ability to work. See Simmons v. Massanari, 264

F.3d 751, 755 (8th Cir. 2001).

In the instant case, plaintiff contends that the medical evidence in the record dated prior to December 31, 1993 demonstrates the presence of the severe impairments of diabetes, right shoulder pain, and neuropathy. Despite plaintiff's claims, the objective medical evidence is not supportive of the presence of a severe impairment prior to December 31, 1993. In October of 1992, plaintiff presented to VAMC with complaints of right shoulder pain and was given a provisional diagnosis of rule out bursitis. (Tr. 138). Subsequent x-rays of plaintiff's right shoulder were normal. (Tr. 140). Plaintiff was diagnosed with biceps tendonitis and underwent a short course of physical therapy in November and December of 1992. (Tr. 139-41). Plaintiff presented to VAMC on February 22, 1993, at which time his diagnoses were listed as degenerative joint disease, insulin-dependent mellitus, tendonitis, and chronic obstructive pulmonary disease, although there was no evidence of any objective testing performed. (Tr. 142). This was the last record from the relevant period. There is no indication in the medical record that plaintiff's shoulder impairment resulted in long-term limitations. The ALJ properly found that the plaintiff had only slight abnormalities that did not significantly limit the performance of any basic work activities at the time his insured status expired.

The ALJ also performed a proper credibility analysis. "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (quoting settlement agreement between Department of Justice and class action plaintiffs who alleged that the Secretary of Health and Human Services unlawfully

required objective medical evidence to fully corroborate subjective complaints). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. See also Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.

The ALJ first noted that none of plaintiff's treating physicians expressed the opinion that plaintiff was unable to work or otherwise imposed any limitations on plaintiff. (Tr. 17). The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).

The ALJ also pointed out that plaintiff did not seek regular or sustained treatment during the relevant time period. (Tr. 17). This is an appropriate consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

The ALJ next stated that there is no evidence in the record that plaintiff took strong doses of pain medication and there is no allegation of adverse side effects from medications that plaintiff did take. (Tr. 17). The failure to request pain medication is also an appropriate consideration when assessing the credibility of a claimant's complaints of pain. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003).

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).  However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints.  See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).  In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not credible is supported by substantial evidence.

## Conclusion

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment prior to December 31, 1993.  Accordingly, Judgment will be entered separately in favor of defendant in accordance with this Memorandum.

Dated this   5th   day of March, 2008.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE